IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-01340-DDD-KAS

CHURCH OF THE ROCK, INC., d/b/a THE ROCK,

     Plaintiff,

v.

THE TOWN OF CASTLE ROCK, COLORADO,

     Defendant.

---

**ORDER GRANTING IN PART
MOTION FOR A PRELIMINARY INJUNCTION**

---

This case pits a church that contends its religious beliefs compel it to provide homeless people temporary shelter in mobile homes on its property against a town whose zoning regulations prohibit that use of the property. The church has moved for a preliminary injunction against enforcement of those regulations and other government actions pending trial on the merits. The motion is granted in part.

## BACKGROUND

Plaintiff Church of the Rock operates what it calls "an On-Site Temporary Shelter Ministry" to provide short-term housing to individuals and small families experiencing homelessness. Doc. 1 at 1. This ministry presently consists of an RV and a camping trailer parked on the western edge of the Church's parking lot, roughly 400 feet from the adjacent property. *Id.* at 27. The Church also periodically partners with the Red Cross to provide shelter to needy individuals on the Church's property during times of emergency, such as during a winter storm or a fire. *Id.*

- 1 -

at 37. For example, during a blizzard in 2022, the Red Cross provided forty cots in the main Church building, and Church staff and volunteers coordinated shelter efforts and served meals. *Id*. at 39.

The Church's main purpose in operating the On-Site Temporary Shelter Ministry is to "provide individuals and small families experiencing homelessness with a safe, temporary shelter–together with food, clothing, [and] other material necessities." *Id*. at 27. The Church also provides families with non-compulsory access to religious services and assists adults with finding stable employment and a permanent place to live. *Id*. Since the inception of this ministry, the Church has provided housing to several individuals and families, including a single mother and her three-year-old son and at least two people recovering from addiction. *Id*. at 34–37.

The Church contends that it carries out these ministries because of its faith and its religious mission to provide for the needy, emphasizing the fact that "the Holy Bible specifically and repeatedly directs faithful Christians like the Church's members to care for the poor and needy out of compassion and mercy for those who are experiencing significant misfortune and hardship." *Id*. at 16–17. The Church cites a number of Bible verses that provide an injunction to care for the downtrodden and the poor. *Id*. at 17–20.

On November 10, 2021, the Zoning Manager of the Town of Castle Rock sent the Church a "Notice of Zoning Violation" alleging that the On-Site Temporary Shelter Ministry was prohibited by the applicable zoning code, which designates the Church's property as a Planned Development ("PD") zone and specifies the permitted uses, densities, and other development controls for the property as a whole. *Id*. at 14, 40. These PD regulations were initially negotiated in 2003 in order to facilitate the annexation of the Church property into the Town of Castle

Rock. *Id.* at 15. Though the PD regulations allow the Church to use the property for "Church and related uses," they do not specifically indicate whether camping in RVs or trailers is allowed on the property. *Id.* at 16, 40. They also state that the "Development Plan serves a compelling governmental interest," that the zoning requirements are the "least restrictive possible to accomplish that governmental interest," and that "nothing contained in the [zoning plan] imposes a substantial burden on [the Church's] exercise of religion." Doc. 32 at 3.

After some additional back-and-forth between the Church and the Town, during which the Town allegedly agreed that its objections to the Church's ministry would be resolved if it limited the RVs and trailers in use to two, the Zoning Manager sent a follow-up letter on September 26, 2022. Doc. 1 at 41. This follow-up letter stated that "[a]s previously discussed, RV's parking on the property for either storage or use to live in, is not an allowed use on the property under the current zoning." *Id.* On November 9, 2022, the Town's attorney followed up with the Church again, informing it that residential use of the parked RV and trailer was not permitted under the applicable PD zoning regulations. *Id.*

On February 14 and March 9, 2023, the Church met with several Town officials to explain its position that the Temporary Shelter Ministry was permitted both by the PD regulations as a "Church use" and by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* at 42. However, on September 9, 2023, having reached an impasse, the Town formally charged the Church with zoning violations in a "Letter of Determination," which reiterated the Town's position that "RVs parked onsite, that serve as a residence are not an allowed use." *Id.*

On October 13, 2023, the Church appealed the Letter of Determination to Castle Rock's Board of Adjustment, which heard arguments on December 7, 2023, regarding whether the On-Site Temporary Shelter

Ministry was allowed either under RLUIPA or the PD itself. *Id.* at 43–4. At the conclusion of the appeal hearing, the Board of Adjustment approved the Town's motion to affirm the Zoning Manager's Letter of Determination. *Id.* at 44. Since then, the Church has had to turn away at least two homeless families seeking shelter in its RV and trailer. *Id.* at 49–50.

The Church alleges that the Town then pressured Douglas County to cease partnering with the Church on its Red Cross emergency shelter program. *Id.* at 44. The Church also alleges that the Town retaliated against it by threatening to revoke the business license of a coffee shop that was set to open in the Church in April 2024 but lacked the "retail" license needed to do so. *Id.* at 46–7. Also around this time, the Douglas County Housing Partnership informed the Church it would stop advising it on a future low-income workforce-housing project that the Church is pursuing on its land. *Id.* at 48. The Housing Partnership explained that the adversarial relationship between the Town and the Church prohibited their continued collaboration on this project because the Housing Partnership's Board included the Town of Castle Rock. *Id.*

The Church then filed this suit, bringing several causes of action, including that the Town's restrictions (1) violated the Church's rights under RLUIPA; (2) violated the Church's Free Exercise rights under the First Amendment; (3) constituted unlawful retaliation for the Church's assertion of its Free Exercise rights; and (4) amounted to a violation of the Establishment Clause of the First Amendment. *Id.* at 50–68. The Church also filed the instant motion for a preliminary injunction requesting this Court to enjoin the Town from "(1) interfering with the Church's operation of its On-Site Temporary Shelter Ministry as to two RVs/trailers on the Church's Property; (2) interfering with the Church's Red Cross Partnership; and (3) taking any adverse action against the

Church or those with whom the Church affiliates in retaliation for the Church's exercise of its constitutionally or statutorily protected rights." Doc. 8–34 at 47–8. This motion is granted as to the first request, but denied as to the others.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). One may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018). To succeed on a motion for preliminary injunction, the moving party must show: (1) that it is "substantially likely to succeed on the merits"; (2) that it will "suffer irreparable injury" if the court denies the injunction; (3) that its "threat-ened injury" without the injunction outweighs the opposing party's un-der the injunction; and (4) that the injunction is not "adverse to the pub-lic interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth prelimi-nary-injunction factors "merge" when the government is the party op-posing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

### I.   The Church is not entitled to an injunction with respect to its Red Cross partnership or its claims of retaliation.

I find that the Church has not shown that its Red Cross emergency shelter program faces a risk of imminent adverse action from the Town. Though the Church stressed at oral argument that the Town is likely to prohibit the operation of the emergency shelter program in the event of a storm this coming winter, this possibility is not sufficiently proximate to justify a preliminary injunction at this point. *See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("To constitute

irreparable harm, an injury must be certain, great, actual and not theoretical.") (internal quotation marks omitted). Furthermore, while the Town's Board of Adjustment specifically found that the PD Regulations prohibit camping in RVs and trailers on the Church's property, it has not conclusively spoken on the question of whether or not the Church can accommodate needy individuals in the main Church building during times of emergency. Though these scenarios undoubtedly bear some resemblance to each other, they are different enough that it would not be unreasonable for the Board of Adjustment to find that one is prohibited by the applicable zoning regulations and the other is not.

The Church has also not shown that a preliminary injunction is necessary to prevent retaliation. First, the Church's allegations on this point at times conflate the Town of Castle Rock with Douglas County. As the Town pointed out at oral argument, it was Douglas County—a non-party to this lawsuit—that initiated the health inspection of Lost Coffee. Though the Church alleges that the Town of Castle Rock somehow pressured Douglas County to conduct an early inspection of the Church's new onsite retail coffee business, its only evidence on this point is the temporal proximity between the Church's dispute with the Town and Douglas County's inspection. Doc. 8–34 at 20–22. Based on the Church's allegations, it also seems there was an independent basis for the health inspection: though the Church emphasizes that it had been serving coffee since 2006, it is undisputed that it had never served coffee in a retail capacity until its partnership with Lost Coffee. *Id.*; *see also* Doc. 32 at 9–10.

Second, even if the evidence of retaliation were stronger, the requested injunction would not be appropriate. The Church asks for an injunction prohibiting the Town from "taking any adverse action against the Church or those with whom the Church affiliates in retaliation for

the Church's exercise of its constitutionally or statutorily protected rights," but this is merely a restatement of what is already prohibited by law, and injunctions that simply command a party to "obey the law" are highly disfavored. *See Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 895 F.2d 659, 668 (10th Cir. 1990) ("[G]enerally, injunctions simply requiring the defendant to obey the law are too vague."). The Church is therefore not entitled to an injunction with respect to either the operation of its Red Cross partnership or the possibility of future retaliation from the Town.

## II. The Church is entitled to an injunction with respect to its On-Site Temporary Shelter Ministry.

The Church has shown it is entitled to an injunction with respect to its operation of the On-Site Temporary Shelter Ministry. Though the Church also seeks the same injunctive relief pursuant to its claims under the Free Exercise and Establishment clauses of the First Amendment, it is not necessary to address those constitutional questions here, because the RLUIPA claim is enough to warrant the requested relief.

### A. The Church's RLUIPA claim is ripe.

RLUIPA prohibits a municipality from enforcing a "land use regulation in a manner that imposes a substantial burden on the religious exercise of . . . a religious assembly or institution, unless the government demonstrates" the regulation is both "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1); *see generally id.* § 2000cc-5(4). In other words, "RLUIPA sets up a strict scrutiny standard for the implementation of land use regulations." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006). RLUIPA has been called the "sister statute" of RFRA, the Religious Freedom Restoration Act, which established a nearly identical

standard for governmental arrogations of religiously motivated activity. *Burwell v. Hobby Lobby Stores*, Inc., 573 U.S. 682, 730 (2014).

The Town argues as a threshold matter that the Church's claims are not ripe because "avenues still remain for the government to change its decision" with respect to whether the Church's On-Site Temporary Shelter Ministry is permitted by the applicable zoning regulations. Doc. 32 at 12 (citing *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 480 (2021)).[1] It bases this contention on the idea that the Church could ask the Town to amend its PD regulations. *Id.* at 13. The Town has explained that its procedure of amendment entails receiving a proposed amendment, setting it for public notice and comment, and having a vote of the town council. Doc. 32 at 13.

The theoretical possibility of amendment does not make the Church's claim unripe. To the contrary, the Church is correct that the Town's zoning decision was final and that its claims are ripe for adjudication. As the Supreme Court has recently clarified, "exhaustion of state remedies is not a prerequisite for a [constitutional] claim when the government has reached a conclusive position." *Pakdel*, 594 U.S. at 480 (addressing the ripeness "finality" requirement in the context of Fifth Amendment takings claims) (internal quotation marks omitted). Once "there is no [longer any] question about how the regulations at issue apply to the particular land in question," the government's decision is final for the purposes of determining whether a challenge to it is ripe for review. *Id.* at 478 (cleaned up). Importantly, "the finality requirement is relatively modest" and "nothing more than *de facto* finality is necessary." *Id.* at 479.

---

[1] While the Town acknowledges that "the Tenth Circuit has not yet spoken on the issue" of whether a ripeness requirement applies to RLUIPA claims, the Church does not dispute that it does. Doc. 32 at 13.

As the Church notes, "the Board of Adjustment's December 7, 2023, decision was a final decision interpreting the PD Regulations as applied to the issues in dispute here" and the "Town does not cite any case, from any court, requiring a plaintiff to request an amendment to a regulation before the plaintiff may challenge that regulation as violating RLUIPA or the First Amendment." Doc. 38 at 8–9. The Town's interpretation of its zoning regulations as applied to the Church is clear and final. That the government could theoretically amend the rules at issue in this case does not make its determination about the application of this law any less conclusive or unambiguous.[2]

The Town's argument at the hearing that *North Mill Street, LLC v. City of Aspen* compels a finding that the Church's claims are not ripe is mistaken. That case held, in the context of a regulatory takings claim, that the plaintiff needed to submit an application for Planned Development zoning before its claim was ripe. 6 F.4th 1216, 1231 (10th Cir. 2021). Here, by contrast, the record is clear that the Church is already zoned as a Planned Development, meaning it does not have the same options available to it as did the plaintiff in *North Mill*. Further, since Planned Development zoning essentially functions to grant certain properties variances from city or county-wide zoning codes, and variances are distinct from amendments, a requirement that plaintiffs apply for Planned Development zoning before bringing suit is conceptually different from a requirement that plaintiffs seek amendment of the zoning code itself.

Ripeness inquiries also consider "the hardship to the parties of withholding judicial consideration." *Peck v. McCann*, 43 F.4th 1116, 1133

---

[2] In theory, the town's argument would render every claim unripe, because any law or regulation could hypothetically be changed with sufficient effort and process

(10th Cir. 2022). This factor militates in favor of the Church too. While judicial intervention will clarify the relationship between the Church's RLUIPA rights and the Town's zoning regulations, withholding judicial intervention would subject the Church to an ongoing prohibition from exercising its sincerely held religious beliefs. Such a prohibition would presumptively be a significant hardship for the Church, even if it only had to bear this hardship during the pendency of a state proceeding to amend the Board of Adjustment's decision. *See, e.g., Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013) (holding that government acts substantially burden religious exercise if they "prevent [] participation in conduct motivated by a sincerely held religious belief"). These considerations are further bolstered by the fact that Tenth Circuit "case law encourages particular lenience in First Amendment ripeness inquiries." *Peck*, 43 F.4th at 1134 (collecting cases). The Church's claims are ripe for review.

### B. The Church is Likely to Succeed on the Merits.

#### 1. The Town's zoning regulations impose a substantial burden on the Church's religious beliefs.

The Town argues that the Church's RLUIPA claim is not likely to succeed because the applicable zoning regulations do not substantially burden the Church's exercise of its religious beliefs. Doc. 32 at 14. The Town instead characterizes the nature of the burden as a "mere inconvenience" and suggests that the Church could find other ways to satisfy its religious compulsion to provide for the needy, such as by providing hotel rooms or housing in other areas that are zoned for residential use. *Id.* at 14, 18. It also suggests that finding a substantial burden in this case "effectively would be granting an automatic exemption to religious organizations from generally applicable land use regulations." *Id.* at 16 (quoting *Andon*, *LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016)).

- 10 -

The Church responds that its religious beliefs don't just obligate it to provide for the needy in some general way; they obligate it to provide for the needy *on Church property*. Specifically, the Church points to Leviticus 25:35–36, which urges Christians to allow the poor to "continue to *live among you*." Doc. 38 at 11. The Church stresses that by preventing it from allowing the homeless to live on its property, the Town is precluding the Church from exercising its religious beliefs regardless of whether it might be possible to provide for the needy in some other way. *Id*. at 10.

The Church has carried its burden on this question. As the Tenth Circuit has noted, a substantial burden exists for the purposes of RLUIPA where the government "prevents participation in conduct motivated by a sincerely held religious belief." *Sebelius*, 723 F.3d at 1138 (10th Cir. 2013). Although the Town alludes to a bit of a disconnect between the Church's assertion that it is compelled to allow the poor to "live among you" and its desire to have people live in RVs on Church grounds rather than in homes and residential areas where Church members live, it does not ultimately dispute the sincerity of the Church's assertions on this point, which are supported by sworn affidavits. *See* Doc. 8–4 at 24, 38. And while the Town may eventually show that the Church's beliefs are not in fact sincere or that there is a non-religious motivation behind the desire to allow people to live on Church property, it has not done so at this point. *See Grace United Methodist Church*, 451 F.3d at 648 ("The jury found that Grace United had failed to prove the proposed operation of the daycare center was a sincere exercise of religion under RLUIPA.").

To the extent there is a dispute about whether the Church's stated beliefs actually require it to provide shelter on its own property, there is no reason to second-guess the Church at this point, regardless of how

idiosyncratic or mistaken the Town may find its beliefs to be. *See Does 1–11 v. Regents of the Univ. of Colorado*, 100 F.4th 1251, 1274 (10th Cir. 2024) (rejecting policy that allowed exemption "for some favored religious applicants" over others who did not adhere to "official doctrine"). To hold otherwise would invite the sort of "trolling through a person's . . . religious beliefs" and "governmental monitoring or second-guessing" of "religious beliefs and practices" that the Tenth Circuit recently reiterated is forbidden by the First Amendment. *See Does 1–11*, 100 F.4th at 1271, (quoting *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1261 (10th Cir. 2008)).

The Town's argument that deciding in favor of the Church would result in blanket exemptions for religious institutions from generally applicable zoning laws is also unavailing. Though the Town points to somewhat senescent First Amendment jurisprudence that upholds generally applicable, neutral laws, Congress specifically rejected this limitation when it drafted RLUIPA.[3] *Compare* 42 U.S.C. § 2000cc *with Employment Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990).[4] Indeed, as the Supreme Court has noted, "Congress, in enacting

---

[3] While pre-*Smith* Free Exercise jurisprudence can be relevant to analysis of RLUIPA claims, the general-applicability-and-neutrality test laid out in *Smith* is not. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006).

[4] Post-*Smith* Free Exercise jurisprudence has in fact cut away so much of *Smith's* initial rule that multiple sitting Justices have suggested that they are inclined to do away with the "generally applicable" rule altogether. *See, e.g., Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 545 (2021) (Alito, J., concurring) (stating that *Smith* is "ripe for reexamination").

RFRA[5], took the position that the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing governmental interests." *Burwell*, 573 U.S. at 735. I therefore decline to follow the Town's suggestion, based on out-of-circuit precedent, that RLUIPA is merely an anti-discrimination provision[6] and that all "generally applicable burdens, neutrally imposed" are not substantial. *See, e.g., Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 350 (2d Cir. 2007) (finding a zoning law was not neutral because its application was "arbitrary and capricious"). RLUIPA itself does not contain this limitation, and neither the Tenth Circuit nor the Supreme Court has adopted this view, which would apparently make RLUIPA coextensive with the Free Exercise Clause of the First Amendment. Accordingly, I find that the zoning regulations at issue here substantially burden the Church's ability to exercise its religious beliefs.

### 2. The Town has not demonstrated that it has a compelling interest in preventing the Church from exercising its sincerely held religious beliefs.

The Town does not explicitly argue that it has a compelling interest in enforcing the PD Regulations as interpreted by the Board of Adjustment, and the Church contends that the Town could have no such

---

[5] Though *Burwell* makes this point with respect to RFRA, it is equally applicable to RLUIPA, which the Tenth Circuit has explained "is to be interpreted by reference to [RFRA] and First Amendment jurisprudence." *Grace United Methodist Church*, 451 F.3d at 661.

[6] The Town's position in this case in fact seems to be motivated not by animus but by traditional NIMBYism related to RVs, portable toilets, and homeless individuals in an upscale neighborhood. The Church's desire to develop a larger-scale affordable housing operation on its property surely exacerbates those concerns, and may be part of a new effort to fight "Not-In-My-Back-Yard-ism" with "Yes, In God's Backyard"-ism. *See* Patrick E. Reidy, C.S.C., *Churching NIMBYs: Creating Affordable Housing on Church Property*, 133 Yale L.J. 1254 (2024).

interest because the Church takes a number of precautions to ensure that its temporary shelter is safe. These include having a third party conduct background checks and requiring any RV tenants to sign contracts indicating that they will abide by certain rules. Doc. 1 at 32. The Town does suggest that "any injunction in favor of the Church will cause harm by sowing confusion and conflict on the ground," but does not really explain how or why confusion would result. Doc. 32 at 27. The Town makes no attempt to offer a substantive defense of the zoning law beyond this generic point.

Nor does it argue that the minimal use the Church seeks to protect in the present motion would itself cause harm. As the Church has emphasized, and the Town has not disputed, "the Church has never experienced any public-safety or other related issues while carrying out this ministry, even as it has temporarily house numerous individuals and small families." Doc. 8-34 at 32.

Instead, the Town appears concerned about the precedent that would be set, which it suggests might allow either much larger housing projects on the Church's own property[7] or other institutions or individuals to try to use mobile homes in a similar manner. "The [Town's] argument echoes the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006). But as both parties acknowledged during the hearing, the former scenario is factually quite different than the matter before the court here, and the latter is entirely speculative. The Town has therefore failed to carry its burden of showing that it has narrowly

---

[7] See n. 6 above.

tailored its restrictions to an interest sufficiently compelling to justify an infringement on the Church's rights under RLUIPA.

### C. The Church Will Suffer Irreparable Harm Absent an Injunction.

The Church has also demonstrated that it will suffer irreparable harm absent a preliminary injunction allowing it to carry on with its On-Site Temporary Shelter Ministry. The fact that the Church has already had to turn away homeless families in need, in violation of its sincerely held beliefs that it must serve and house them on its property, makes this harm all too clear. Doc. l at 39–39. Despite the Town's arguments to the contrary, "violations of individual constitutional rights. . . such as the rights guaranteed by the First and Fourteenth Amendments," in and of themselves amount to irreparable harm. *Leachco, Inc. v. Consumer Product Safety Comm'n*, 103 F.4th 748, 753 (10th Cir. 2024); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) ("This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise."); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (3d ed. 2019) ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable harm is necessary.").

### D. The balance of interests tips in favor of granting an injunction in favor of the Church.

The Town claims it would be harmed by an injunction because "a restriction on the enforcement of the law is irreparable." Doc. 32 at 26. The Church is correct, however, that the cases which the Town cites to support this position are distinguishable. Doc. 38 at 13; *See, e.g., O Centro Espirita Beneficiente Uniao De Vegetal v. Ashcroft*, 314 F.3d 463, 467

(10th Cir. 2002) ("The government suffers irreparable injury when its criminal laws are enjoined *without adequately considering the unique legislative findings in this field.*") (emphasis added). As explained in section II.B.2 above, the Town has not argued at this juncture that it would suffer any actual, material harm by allowing families to stay in the Church's two mobile homes.

And regardless of the interests that the Town may have, those interests cannot outweigh the Plaintiffs' interest in protecting their RLUIPA and First Amendment rights.[8] *See Awad*, 670 F.3d at 1131. To the contrary, "when a law is likely unconstitutional, the interests of those the government represents, such as voters, do not outweigh a plaintiff's interests in having its constitutional rights protected." *Citizens United*, 773 F.3d at 218 (alterations omitted); *see also Ramirez v. Collier*, 595 U.S. 411, 433 (2022) ("RLUIPA recognizes that prisoners like [plaintiff] have a strong interest in avoiding substantial burdens on their religious exercise, even while confined.").

### E. The Church is entitled to a narrow injunction.

Having shown that the balance of the equities tip in its favor, that it will suffer irreparable harm absent an injunction, and that it has a strong likelihood of success on its RLUIPA claim, the Church has established that it is entitled to a narrow injunction enjoining the Town from interfering with its On-Site Temporary Shelter Ministry as to the two

---

[8] Given that the equities tip so dramatically in favor of the Church, I believe it should not have to make such a strong showing with respect to its likelihood of success on the merits. *See Generally* Thomas R. Lee, *Preliminary Injunctions and the Status Quo*, 58 WASH. LEE L.REV. 109 (2001). Even under the searching standard articulated by the Tenth Circuit, however, which requires a strong showing on both the balance of harms and the likelihood of success, the Church has shown that it is entitled to a preliminary injunction. *See O Centro Espirita Beneficiente Uniao De Vegetal v. Ashcroft*, 314 F.3d at 467.

mobile homes on the Church's property. This injunction is limited to the facts of this case, which show that the Church has a large lot and the concomitant ability to keep its shelter at a distance from nearby residential areas, that its shelter only consists of two vehicles, and that it has received no complaints about drug use or experienced any crime as a result of its ministry.

### a. Security Is Not Necessary.

Under Fed. R. Civ. P. 65(c), a court may issue a pre-liminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." District courts have "wide discretion" in determining "whether to require security." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (emphasis added). Where there is "an absence of proof showing a likelihood of harm" to the enjoined party a bond is not necessary. *Id*. Defendants have not suggested that enjoining them would cause any monetary damages, nor have they requested a bond. Therefore, I do not require Plaintiff to provide a security bond.

### CONCLUSION

It is ORDERED that:

The Motion for a Preliminary Injunction (Doc. 8) is GRANTED IN PART and DENIED IN PART. The injunction is denied as to its second and third requests, regarding alleged interference with the Church's Red Cross partnership and retaliation against the Church for exercising its rights. The motion is granted as to the Church's On-Site Temporary Shelter Ministry. Specifically, the Town is PRELIMINARILY EN-JOINED from enforcing the Town's land-use laws against the Church to prohibit the Church's operation of its On-Site Temporary Shelter

Ministry as to the two RVs/trailers on the Church's property during the pendency of this suit.

DATED: July 19, 2024          BY THE COURT:

Daniel D. Domenico
United States District Judge